UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, a corporation,<br><br>Plaintiff,<br><br>v.<br><br>UPS GROUND FREIGHT, INC., d/b/a UPS FREIGHT, a corporation,<br><br>Defendant. | Civ. Nos. 13-3726 & 13-3727 (KM)(MAH)<br><br>SUPPLEMENTAL OPINION |

## MCNULTY, District Judge

This action under the Carmack Amendment, 49 U.S.C. § 14706 *et seq.*, arises from damage to two interstate shipments of goods. The Plaintiff, Indemnity Insurance Company of North America ("Indemnity"), is the subrogating insurance company for the owner of the freight, G.E. Healthcare. (I will refer to the plaintiff as "GE".) The Defendant, UPS Ground Freight, Inc. ("UPS"), is a motor carrier.

By Memorandum Opinion and Order filed March 31, 2016 (ECF nos. 69, 70) I denied UPS's motion pursuant to Fed. R. Civ. P. 56, for partial summary judgment to limit and cap damages. I found that although many of the underlying facts were uncontested, certain issues of contractual interpretation potentially posed genuine, material issues of fact.

On April 21, 2016, UPS filed a motion for partial summary judgment and relief from my March 31 Order. (ECF no. 73) The same day, counsel jointly filed a letter stating that they were uncertain as to what factual issues, if any, remained. (ECF no. 72) I convened a conference call with counsel, in which

1

both sides stated that they had no further evidence to submit. (ECF no. 74) At the Court's suggestion, counsel submitted a joint letter in which they consented to withdraw the April 21, 2016 motion; agreed that there were no issues of fact that they regarded as material still in dispute; and agreed to submit the issue of contractual interpretation to the Court for final decision. (ECF no. 75)

As a result, I now decide the issue presented by UPS's motion for partial summary judgment (ECF no. 57) based on the record as it stands. This opinion must be read as a supplement to my earlier-filed Opinion, and all of that Opinion's abbreviations and terms are adopted here. (ECF no. 69) For the reasons stated herein, the motion for partial summary judgment is again DENIED. Amplifying my reasoning, I hold that the liability of UPS is not limited by the value declared on the bills of lading, but is governed by the GE Contract.

## DISCUSSION

The upshot of my earlier opinion denying summary judgment is as follows. The plaintiff, GE, alleges damages totaling $1,039,484.94 as a result of defendant's mishandling of two shipments in 2010 and 2012. The defendant, UPS, contends that damages are contractually limited to the value of goods declared on the bills of lading: $2.30 per pound, which comes out to a total of $15,772.80.

GE as "Shipper" and UPS as "Carrier" had an overall contract governing their relationship. That GE Contract provides at section 7(A):

> A. Carrier is liable to Shipper for full invoice value (see paragraph E) of Shipper's goods for loss or damage to goods....

GE Contract § 7(A) (the "Full Invoice Value" provision). The cross-referenced paragraph 7(E) provides:

> E. Except as otherwise provided, Carrier's maximum liability will not exceed $250,000 per occurrence.

GE Contract § 7(E) (the "$250,000 Limit" provision).

2

The GE Contract also has an override provision, paragraph 2(E):

> E. To the extent that any bills of lading, or other shipment documents used in connection with transportation services provided pursuant to the contract are inconsistent with the terms and conditions of this contract (including the terms and conditions of Appendices or Exhibits incorporated by reference), the terms and conditions of this Contract (and any incorporated Appendices and Exhibits) shall govern.

GE Contract § 7(E) (the "Override Provision"). Finally, the GE Contract contains an "Entire Contract" clause, providing that its terms cannot be modified or waived except by a writing signed by both parties. GE Contract § 15 ¶7.

Under the Carmack Amendment, the carrier may limit its liability "to a value established by written or electronic declaration of the shipper or by written agreement between the carrier and shipper if that value would be reasonable under the circumstances surrounding the transportation." 49 U.S.C. § 14706(c)(1)(A). UPS says each of the bills of lading, stating a value of $2.30/lb., is such a "written agreement" or "declaration" that limits UPS's liability. GE replies that the GE Contract (ECF no. 57-3 at 6) is the controlling "written agreement between the carrier and the shipper," and that it renders UPS liable for the Full Invoice Value of the goods, subject only to the $250,000 Limit.

The issue, then, comes down a dispute over which shall control: (a) the value declared on the bills of lading, or (b) the more general Full Invoice and $250,000 Limit provisions of the GE Contract.

*Penske Logistics, Inc. v. KLLM, Inc.*, 285 F. Supp. 2d 468 (D.N.J. 2003), faced by a similar scenario, enforced the limitation in the bill of lading. Judge Wolin cited general principles of contract law that interrelated contracts should be interpreted as a whole, so that no part is rendered superfluous or meaningless. Thus, he concluded, the override provision in the general contract should not be interpreted to override the bill of lading; rather the bill of lading should be regarded as "incorporated" in the general contract, because the

3

contract required that each individual shipment be "evidenced by a written receipt."

I was less certain:

> I cannot so easily read the court's interpretation of the *Penske* contract onto this, the GE Contract. These are not the kind of simultaneously-executed, interlocking agreements to which the rules of contract interpretation cited in *Penske* most clearly apply. When the GE Contract was signed, these bills of lading did not yet exist. One permissible reading of the Contract is that GE protected itself against the unknown terms of those future bills of lading by telling UPS, in effect, to ignore them to the extent they conflicted with the Agreement. Thus default rules of contract interpretation may not help us where the very *purpose* of an Override Provision may be to render terms of the other contract superfluous. UPS contends that there is no such inconsistency; but where the contract requires $1 million, and the bill of lading requires $15,000, there may well be. Full Invoice Value and the amount on the bill of lading are not the same thing, and at least one permissible interpretation of the Agreement is that it overrides the bill of lading.

(ECF no. 69 at 7) I went no farther than to deny the motion of UPS for summary judgment. I believed that the matter should be tried, because evidence regarding the intent of the parties might shed further light on the meaning of the Agreement.

With the parties' authorization, however, I now rule more broadly, based on the record before me. I adopt the "one permissible interpretation of the Agreement" referred to in the quoted passage. I hold that the GE Contract overrides the declared value that the warehouse placed on the bills of lading.

My reasoning is as follows. The terms and conditions of the Contract state that UPS shall be liable for the full invoice value, subject to the limitation of $250,000. The bills of lading impose a limit of $15,000 based on their declared value. The two are therefore "inconsistent." The GE Contract's Override Provision addresses the very situation where "bills of lading ... are inconsistent with the terms of conditions of this contract," providing that in

4

such a case, "the terms and conditions of this Contract ... shall govern." GE Contract § 7(E). The Contract, not the bill of lading, controls.

I am confirmed in that conclusion by the integration clause, which provides that the terms of the GE Contract cannot be altered except by a writing signed by both parties. GE Contract § 15 ¶7. The bill of lading is not signed by both parties (*i.e.*, by GE and UPS). And it is reasonable to conclude that GE, in giving primacy to the Contract and requiring a mutual writing to alter it, sought to protect itself against the actions of third parties, such as warehousemen.[1]

UPS, in its now-withdrawn Rule 60 motion, argued that I had overlooked the "dispositive impact" of *Penske*. (ECF no. 73 at 4) In UPS's view, when I stated that the GE Contract and the bills of lading "are not the kind of simultaneously-executed interlocking agreements to which the rules of contract interpretation cited in *Penske* most clearly apply," I overlooked the fact that the contract and bills of lading in *Penske* itself were not simultaneously executed. I meant no more than I said: that the "rules of contract" cited in *Penske*—not the *Penske* case itself—applied most clearly to simultaneously executed contracts. To be clear, I disagree with the holding of *Penske*, at least as it applies here. As a decision by a judge of coordinate jurisdiction, it does not control as precedent.

The default rules of contract interpretation cited in *Penske* do not assist the analysis. Other things being equal, all parts of contracts (or interrelated contracts) should be given effect. Here, however, the *very purpose and intent* of the Override Provision is to render a conflicting bill of lading ineffective.

---

[1] Indeed, GE's contract with its warehouse forbade the warehouse to declare the value of goods on bills of lading. (Warehouse Contract p. 25 (Attachment D). UPS, however, was not a party to the Warehouse Contract and had no reason to know that.

5

## CONCLUSION

For the reasons stated above, the relief sought in the motion of UPS for partial summary judgment (ECF no. 57) is and remains DENIED. Amplifying my reasoning, and ruling on the issues of contractual interpretation submitted to the Court by mutual consent, I hold that the liability of UPS is not limited by the value declared on the bills of lading, but is subject to the overriding terms of the GE Contract (ECF no. 57-3 at 6).

An appropriate Order accompanies this opinion.

Dated: June 2, 2016

KEVIN MCNULTY
United States District Judge